IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THOMAS PAUL WYNN,

      Plaintiff,               No. 2:10-cv-0546 EFB P

      vs.

CATE, et al.,

                              ORDER AND
      Defendants.         FINDINGS AND RECOMMENDATIONS
_____/

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. The remaining defendant, Casillas, moves for summary judgment arguing that he is entitled to judgment in his favor as a matter of law. Dckt. No. 21. For the reasons that follow, the undersigned recommends that the motion be denied.

**I.    Background**

This action proceeds on the complaint filed March 8, 2010, which alleges that defendant used excessive force against plaintiff on December 16, 2008. Dckt. No. 1. The underlying facts are mostly irrelevant to the instant motion, which turns not on those facts but rather on a legal issue (whether the action is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Edwards v. Balisok*, 520 U.S. 641 (1997)), but are provided here for context. As the parties dispute most of the facts, each party's version is provided here.

According to plaintiff, on December 16, 2008, correctional officers in the building at Mule Creek State Prison ("MCSP") where he was housed abruptly shut off the dayroom televisions, causing all the inmates to loudly protest. Dckt. No. 29, Pl.'s P. & A. ISO Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 6.[1] Defendant Casillas approached plaintiff, who was sitting on a bucket in his bed area. *Id.* While still 20 feet from plaintiff, defendant Casillas pulled out his pepper spray and rushed up on plaintiff, who was still sitting. *Id.* Defendant Casillas shouted expletives at plaintiff and ordered him to "shut-up, stand-up, cuff-up." *Id.* Plaintiff did not use expletives or lunge at or approach defendant Casillas or other staff. *Id.* Rather, plaintiff complied with defendant Casillas's orders, putting his hands on the wall to be cuffed. *Id.* at 5. Defendant Casillas then sprayed plaintiff with pepper spray "for a long time as Plaintiff passively stood with his hands on the wall . . . until Plaintiff's cloths [sic] were soaked with pepper spray." *Id.*

According to defendant Casillas, on December 16, 2008, he was conducting a count in plaintiff's building at MCSP when he heard plaintiff yelling obscenities at other officers who were also doing the count. Dckt. No. 21-1, Def.'s P. & A. ISO Def.'s Mot. for Summ. J. (hereinafter "Def.'s Mot. for Summ. J.") at 2. Defendant Casillas finished his count and then approached plaintiff, asking what was wrong. *Id.* Plaintiff yelled obscenities at defendant Casillas. *Id.* Defendant Casillas asked plaintiff several times to calm down, but plaintiff refused. *Id.* Defendant Casillas ordered plaintiff to cuff up, but plaintiff refused. *Id.* Then plaintiff got up from his bunk suddenly and approached defendant Casillas with his hands extended out and yelling obscenities. *Id.* Defendant Casillas sprayed plaintiff with pepper spray. *Id.* Plaintiff then consented to cuff up. *Id.*

The parties do not dispute that plaintiff was issued a "Rules Violation Report" ("RVR") in connection with the incident, charging him with "Behavior Which Could Lead to Violence."

---

[1] Page numbers cited herein refer to those assigned by the court's electronic docketing system and not necessarily those assigned by the parties.

Dckt. No. 21-5, Decl. of C. Cassidy ISO Def.'s Mot. for Summ. J., Ex. B. At the hearing on the RVR on February 6, 2009, plaintiff pleaded not guilty and stated that the RVR was false and that "C/O Casillas did not have to spray me. I was never a threat to him in any way. All I was asking why the TV was shut off [sic], when it never is when the C/Os count. I guess C/O Casillas didn't like me questioning the TV being shut off." *Id.* Plaintiff was found guilty and assessed a loss of 30 days behavioral credit, among other things. *Id.* The credits loss advanced his minimum eligible parole date ("MEPD") from June 6, 1998 to July 5, 1998 (both dates over ten years past at the time of the hearing). *Id.* Plaintiff is serving a term of 15-years-to-life for a second-degree murder conviction. *Id.*

## II.     Motion for Summary Judgment

### A.     Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting

the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*,

5

475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*  If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue.  *Celotex.*, 477 U.S. at 323.  Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

On November 30, 2010, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Dckt. No. 9; *see Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**B.     Analysis**

Defendant argues that plaintiff's suit is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Edwards v. Balisok*, 520 U.S. 641 (1997), because his claims conflict with the disciplinary finding which included a revocation of time credits.  Plaintiff counters that the revocation of credits could not affect the duration of his sentence and thus *Heck* and *Balisok* do not bar the case.  For the reasons that follow, the undersigned agrees with plaintiff.

*Heck* is one in a line of cases generally regarded as beginning with *Preiser v. Rodriguez*, 411 U.S. 475 (1973), in which the U.S. Supreme Court determined that state prisoners seeking an injunction restoring good-time credits revoked in disciplinary proceedings must proceed under the federal habeas corpus statute (28 U.S.C. § 2254) rather than via § 1983.  The court noted the historic role of the writ of habeas corpus as the vehicle for a confined individual to attack the legality of her custody and obtain release and concluded that, because the habeas statute dealt specifically with such a situation, it must be utilized rather than the more general § 1983 where a prisoner attacks (1) the fact of confinement or (2) the duration of confinement.

*Id.* at 484-500.

In *Heck*, the Court further clarified what suits may not be brought under § 1983 but must instead be pursued via petition for writ of habeas corpus. 512 U.S. 477 (1994). There, the court held that a state prisoner may not bring a damages claim under § 1983 attacking the constitutionality of his criminal conviction unless and until the underlying conviction is invalidated via habeas corpus or similar proceeding, because success in the § 1983 damages action would necessarily establish the invalidity of the conviction and attendant confinement. *Id.* at 478, 486-87. The Court emphasized that this rule, sometimes referred to as the "favorable termination rule," applies only where success in the civil rights suit would necessarily imply that the conviction or sentence were invalid. *Id.* at 486-87 and n. 6-7.

The Court took up the interplay between federal civil rights actions and writs of habeas corpus again in *Edwards v. Balisok*, 520 U.S. 641 (1997). In that case, the Court clarified that the favorable termination rule applies to a state inmate who challenges a disciplinary action for which he was assessed a credit loss, even where the inmate seeks no injunction restoring the lost credits, if success in a civil rights action would necessarily imply that the credits should not have been revoked. *Id.* at 643-44, 646-47.

Conversely, in *Muhammad v. Close*, 544 U.S. 749 (2004), an inmate could challenge his pre-disciplinary hearing detention under § 1983 without first invalidating the discipline imposed, because success in the action would not show his underlying criminal conviction to be invalid nor shorten the duration of his sentence by requiring the restoration of revoked credits. The Court clarified that *Heck*'s favorable termination rule does not apply categorically to all suits challenging prison disciplinary proceedings. *Id.* at 754. Prison disciplinary proceedings do not implicate the validity of the "fact of confinement" (*see Preiser*, 411 U.S. at 500) because "these administrative determinations do not as such raise any implication about the validity of the underlying conviction[.]" *Muhammad*, 544 U.S. at 754. Such proceedings *may* implicate the "duration of confinement" (*see Preiser*, 411 U.S. at 500), if credits were revoked. *Muhammad*,

544 U.S. at 754. Because the plaintiff in *Muhammad* lost no credits as a result of the discipline imposed, and because prison disciplinary hearings by their nature do not address the underlying conviction, the plaintiff's § 1983 action could not be "construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence." *Id.* at 754-55.

In *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Court surveyed the line of cases beginning with *Preiser* in determining that inmates challenging state parole procedures could proceed under § 1983. While the prisoners' ultimate goal was arguably to obtain speedier release under more favorable parole procedures, their success in obtaining such procedures in their § 1983 suit would not *necessarily* mean speedier release – parole was not guaranteed under the different procedures. *Id.* at 82. The Court emphasized that the favorable termination rule is limited to situations in which success in the § 1983 action would *necessarily* invalidate confinement or its duration. *Id.* at 81-82; *see also Nelson v. Campbell*, 541 U.S. 637, 647 (2004) (noting that the Court has "stress[ed] the importance of the term 'necessarily.'").

The Court reiterated the availability of § 1983 where success in the suit would not necessarily invalidate the prisoner's underlying conviction nor shorten his sentence in *Skinner v. Switzer*, ___ U.S. ___, 131 S. Ct. 1289, 1298-99 (2011). There, it held that a state prisoner seeking DNA testing of crime-scene evidence could assert his claim under § 1983, even though his ultimate aim was to use the evidence to support a claim of innocence. *Id.* at 1293. Success in the § 1983 suit would only provide the inmate with access to the DNA evidence, which could prove to be inculpatory, exculpatory, or neither. *Id.* The Court noted that none of its cases "has recognized habeas as the sole remedy, or even an available one, where the relief sought would neither terminate custody, accelerate the future date of release from custody, nor reduce the level of custody." *Id.* at 1299 (citing *Wilkinson*, 544 U.S. at 86, Scalia, J., concurring, internal quotation marks omitted) & 1299 n.13.

////

Returning to the facts of this case, the disciplinary finding does not affect the validity of plaintiff's underlying criminal conviction and thus does not implicate the "fact of confinement." *Muhammad*, 544 U.S. at 754.  While defendant argues that the disciplinary finding implicates the "duration of confinement" because the credits loss" push[ed] off" plaintiff's MEPD, success in this action (and any consequent restoration of the revoked credits) would not necessarily result in plaintiff's earlier release.  Plaintiff's MEPD, or minimum eligible parole date, was long past at the time the credits were revoked.  At the time of the revocation, the duration of plaintiff's custody was in the discretion of the parole board and defendant provides no argument or evidence that the board's determination of when to release plaintiff is affected by the credits loss.[2]  *See Vandervall v. Feltner*, No. CIV S-09-1576 DAD P, U.S. Dist. LEXIS 72059, at *15-18 & n.3 (E.D. Cal. July 19, 2010), *report & recommendations adopted by* 2010 U.S. Dist. LEXIS 88704 (E.D. Cal. Aug. 25, 2010) (finding that revocation of credits to a life prisoner does not necessarily affect the duration of confinement because the MEPD does not determine a date of release but merely the date on which the parole board will consider, in its discretion, whether to grant parole).  As success in this action would not impact the validity of plaintiff's criminal conviction nor necessarily shorten the duration of plaintiff's confinement, the *Heck* bar does not apply, and summary judgment in favor of defendant Casillas on that ground is not appropriate.

////

////

////

////

---

[2] Indeed, the undersigned notes that the state Attorney General's Office has, on numerous occasions, argued in this court that a loss of credits to an inmate whose MEPD has passed does not shorten the duration of confinement. *E.g., Avina v. Adams*, No. 1:10-cv-00790 AWI MJS HC, 2011 U.S. Dist. LEXIS 148058, at *3-4 (E.D. Cal. Dec. 23, 2011), *report & recommendation adopted by* 2012 U.S. Dist. LEXIS 45115 (E.D. Cal. Mar. 29, 2012); *Jackson v. Swarthout*, No. CIV S-10-494 GEB EFB P, 2011 U.S. Dist. LEXIS 97713, at *7-8 (E.D. Cal. Aug. 31, 2011), *report & recommendation adopted by* 2011 U.S. Dist. LEXIS 110136 (E.D. Cal. Sept. 27, 2011).

...

### III. Order and Recommendation

Accordingly, it ORDERED that the Clerk of the Court randomly assign a United States District Judge to this case.

Further, it is RECOMMENDED that defendant's October 24, 2011 motion for summary judgment (Docket No. 21) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 26, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE